IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID J. BAILEY<br>270 James Street<br>Mount Ephraim, NJ 08059<br><br>        Plaintiff,<br>  v.<br><br>AMAZON.COM, INC. *d/b/a*<br>AMAZON.COM<br>410 Terry Avenue North<br>Seattle, WA 98108<br>    and<br>AMAZON.COM SERVICES, INC.<br>202 Westlake Ave. N<br>Seattle, WA 98108<br><br>        Defendants. | CIVIL ACTION<br><br>DOCKET NO.:<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

David J. Bailey (*hereinafter* referred to as "Plaintiff," unless indicated otherwise), by and through his undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. This action has been initiated by Plaintiff against Amazon.com, Inc. *d/b/a* Amazon.com and Amazon.com Services, Inc. (*hereinafter* collectively referred to as "Defendants") for violations of the New Jersey Conscientious Employee Protection Act ("CEPA" – N.J.S.A. §§ 34:19-1, *et seq*.). Plaintiff asserts he was terminated from his employment with Defendants for retaliatory reasons. As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

### JURISDICTION AND VENUE

2. Plaintiff resides in and is a citizen of New Jersey.

3. Amazon.com, Inc. *d/b/a* Amazon and Amazon.com Services, Inc. are incorporated under the laws of Delaware with headquarters and/or principal places of business in Washington, rendering them citizens of Delaware and Washington.

4. The United States District Court for the District of New Jersey has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship, as Plaintiff is a citizen of New Jersey, Defendants are citizens of Seattle and Delaware, and the amount in controversy exceeds $75,000.

5. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

6. Venue is properly laid in this District pursuant to 28 U.S.C. sections 1391(b)(1) and (b)(2), because Plaintiff worked for Defendants in New Jersey and *all actions underlying this case occurred in New Jersey*.

7. Venue is further appropriate in this Venue as Plaintiff was hired through and performed work solely for Defendants in their 281 Benigno Boulevard, Bellmawr, New Jersey facility.

**PARTIES**

8. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

9. Plaintiff is an adult individual with an address as set forth in the above caption.

10. Upon information and belief, Amazon.com, Inc. *d/b/a* Amazon.com is an online retailer that offers a wide range of products, including books, music, videotapes, computers,

electronics, home and garden, and numerous other products, with headquarters located at the above-captioned address.

11. Upon information and belief, Amazon.com Services, Inc. is a multinational technology company that focuses on e-commerce, cloud computing, digital streaming, artificial intelligence implementation, and facilities management services, with headquarters located at the above-captioned address. Plaintiff's paystubs and W-2 forms list Amazon.com Services, Inc. as his employer located at that address.

12. Because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership, and management that they made be treated as a single and/or joint employer for purposes of the instant action.

13. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendants.

**FACTUAL BACKGROUND**

14. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

15. Plaintiff was hired by Defendants on or about June 26, 2019 as a Learning Ambassador for Defendants' 281 Benigno Boulevard, Bellmawr, New Jersey facility.

16. Plaintiff was primarily supervised by Area Manager, Paul Zirbser (*hereinafter* "Zirbser").

17. Throughout his tenure with Defendants, Plaintiff was a hard-working employee who performed his job well.

18. As a Learning Ambassador for Defendants' Bellmawr, New Jersey facility, Plaintiff assisted floor managers, trained new associates, ensured that existing associates maintained quality standards, and enforced Amazon protocols.

19. As a result of the global COVID-19 pandemic, on or about March 21, 2020, New Jersey Governor Phillip D. Murphy (*hereinafter* "Governor Murphy"), signed Executive Order No. 107, which ordered steps to mitigate the community spread of COVID-19, including but not limited to "practic[ing] social distancing and stay[ing] six feet apart whenever practicable."

20. Thereafter, on or about April 8, 2020, Governor Murphy, signed Executive Order No. 122, mandating that all manufacturing and warehousing businesses "require individuals to maintain six feet or more distance between them wherever possible" and "require workers and visitors to wear cloth face coverings, in accordance with CDC recommendations. . . [and] gloves, while on the premises."

21. Executive Order No. 122 further provides that "[i]t shall be the duty of every person or entity in this State or doing business in this State . . . to cooperate fully in all matters concerning this Executive Order" or risk being subjected to all available penalties under the law, including fines and/or imprisonment, pursuant to New Jersey Revised Statutes § App. A:9-49 (2013).

22. In or about March and April of 2020, in compliance with the aforesaid New Jersey State laws, Defendants instituted certain safety protocols for its employees, including but not limited to requiring masks for all employees and maintaining six feet or more distance between employees working and/or in Defendants facilities.

23. As a Learning Ambassador, Plaintiff was tasked with enforcing Defendants' aforesaid safety protocols in the facility during his shifts. Defendants advised Plaintiff that these protocols were to be strictly enforced and that violators would be subjected to suspension or even termination.

24. While strictly enforcing Defendants' aforesaid safety and social distancing protocols, Plaintiff observed that Shift Manager, Kristopher Lauderdale (*hereinafter* "Lauderdale") repeatedly violated both New Jersey State COVID-19 mitigation laws/regulations and Defendants' safety protocols by not wearing his mask (either at all or incorrectly) and not maintaining at least six feet distance from other employees.

25. Plaintiff further observed that whenever another Learning Ambassador or employee reported Lauderdale for violating New Jersey State COVID-19 mitigation laws/regulations and Defendants' safety protocols, the reporting/complaining employee would be written up and/or suspended by Defendants' management for bogus reasons.

26. Plaintiff himself had repeated informed Lauderdale that he was violating state COVID-19 mitigation laws and Defendants' safety protocols on several occasions to no avail.

27. What Plaintiff was experiencing was highly disturbing (with regard to the safety and health of Defendants' employees during a global pandemic). COVID-19 related deaths and infections were continuing to rise unabated at this time, and Plaintiff was dismayed by Defendants' managements' failure to properly enforce Governor Murphy's emergency mandates and HR's clear condonement of disciplining, suspending or terminating any employee who attempted to report Lauderdale or his aforesaid violations/illegal conduct.

28. For example, in or about early August of 2020, Plaintiff was working his regular shift and observed that Lauderdale and another manager where standing and talking within just 2-3 feet of either. When Plaintiff advised Lauderdale and the other manager that they were not following mandated social distancing guidelines, Lauderdale ignored Plaintiff and visibly rolled his eyes.

29. After Lauderdale rolled his eyes at Plaintiff's reminder to follow safety/social distancing guidelines, Plaintiff walked over to another employee and expressed his frustration at

Lauderdale's disrespectful response to Plaintiff and failure to follow New Jersey State COVID-19 mitigation laws/regulations and Defendants' safety protocols.

30. Shortly thereafter, Plaintiff made another walking pass by Lauderdale and noticed that he and the other manager were now talking within just a foot of each other and tauntingly watching Plaintiff. In frustration, Plaintiff mumbled "I can't fucking even," and walked away from Lauderdale.

31. Plaintiff then filed a report with Defendants' onsite Human Resources ("HR") Department complaining of Lauderdale's refusal to maintain at least a six-foot distance from other employees, which constituted a violation of New Jersey State COVID-19 mitigation laws/regulations, as well as Defendants' safety protocols.

32. Instead of properly investigating and/or addressing Plaintiff's complaints of Defendants' managements' violations of state and/or federal regulations/laws, Plaintiff was placed on suspension for purportedly "threatening" Lauderdale, and then abruptly terminated just a few days later on or about August 15, 2020.

33. While working for Defendants and following his termination, Plaintiff came to realize that Defendants operated their business unlawfully on a sustained and continued basis with regard to enforcing safety laws/regulations surrounding the COVID-19 pandemic. Plaintiff also discovered that Lauderdale had been reported several times by several employees for violations of said laws/regulations but HR either ignored or refused to pass the complaints on to upper management. Such information came to Plaintiff through his own research, his own observations, directives he was given, and through interactions with coworkers and management.

34. Defendants engaged in several violations of state and/or federal laws/regulations and/or crimes (directly, by way of conspiracy, and through acquiescence and/or ratification of such known unlawful conduct). Solely by way of notice herein and by way of examples (in a non-exhaustive list), such legal violations included but were not limited to:

      a.      Violations of several New Jersey State Executive Orders to protect the public health, safety, and welfare against the emergency created by COVID-19, including Executive Order Nos. 104-122; and

      b.      Occupational Health and Safety Administration ("OSHA")/Department of Labor ("DOL") violations.

35.    Plaintiff merely provides examples *supra* of factual and legal violations of regulations and laws.  *See, e.g.*, *Durst v. FedEx Exp.*, No. 03–CV–5186 (JBS), 2005 WL 3534179, at *5 (D.N.J. 2005) (a plaintiff asserting a CEPA claim is not even required to cite to any laws for his or her reasonable belief of a legal violation during litigation; but rather, to set forth a communicated belief of something that was believed to be unlawful).[1]

36.    Plaintiff was terminated shortly after making complaints to Defendants' management of illegal violations of several regulations and laws (as set forth *supra*), for what he reasonably believes to be pretextual reasons.   In actuality, Plaintiff was terminated specifically because of his opposition to illegal practices of Defendants' management, his refusal to overlook such unlawful acts, and in retaliation for complaining of/reporting same.

**COUNT I**
**Violations of the New Jersey Conscientious Employee Protection Act ("CEPA")**
**(Wrongful Termination - Retaliation)**
**-Against Both Defendants-**

37.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

38.    Plaintiff was terminated for several instances of engaging in protected activity by making complaints and/or for objecting to unlawful actions in the workplace as outlined in significant detail in this Complaint.

39.    These actions as aforesaid constitute violations of CEPA.

---

[1] New Jersey's CEPA statute "has been described as the most far reaching 'whistleblowing statute' in the nation." *Bowen v. Parking Auth. of City of Camden*, No. CIV. 00-5765 (JBS), 2003 WL 22145814, at *16 (D.N.J. 2003).

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

    A.    Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

    B.    Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

    C.    Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress/pain and suffering);

    D.    Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

    E.    Plaintiff is to be given a trial by jury.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____

Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: October 12, 2020